**PAPER CONVERTING MACHINE COMPANY, Appellee,**

v.

**MAGNA–GRAPHICS CORPORATION, Appellant.**

**Appeal No. 85–2576.**

United States Court of Appeals, Federal Circuit.

March 4, 1986.

See also, Fed.Cir., 788 F.2d 1536.

**1014**

Glenn O. Starke, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., argued, for appellant.

Jerome F. Fallon, Tilton, Fallon, Lungmus & Chestnut, Chicago, Ill., argued, for appellee.

Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.

NICHOLS, Senior Circuit Judge.

This appeal returns to the court one phase of a lawsuit concluded in its other phases in *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 223 USPQ 591 (Fed.Cir.1984), familiarity with which is assumed in what follows. Paper Converting sued Magna-Graphics in the United States District Court, Eastern District of Wisconsin, 576 F.Supp. 967, for infringement of U.S. Patent Reissue No. 28,353 ('353), web-winding apparatus and method. That court tried the usual issues of validity, infringement, and willfulness of infringement and decided all three by judgment dated February 28, 1981, affirmed per curiam by the Seventh Circuit April 26, 1982, 680 F.2d 483. The judgment included an injunction against future manufacture or sale of the patented device and this caught Magna-Graphics with a huge machine worth $495,098, when complete, that was in Magna-Graphics' plant about 80 percent finished, and being built under contract with a third party, Fort Howard Paper Company.

It was decided, with Fort Howard's acquiescence, to hold it unassembled pending expiration of the patent, but certain tests were performed with it, after which it was delivered to Fort Howard unassembled, and remained unassembled during the remaining patent life. At the accounting phase that followed remand by the Seventh Circuit, the court considered this machine and concluded that because of the tests, the machine had become, though in some details incomplete, an "operable assembly," and as such, an infringing article. The award of damages accordingly included it in the compensation base upon which treble damages were awarded. This court having taken jurisdiction of the second appeal by reason of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25, we affirmed everything done below, not already affirmed in the Seventh Circuit, except the trebling of damages for the Fort Howard machine. We agreed, over Judge Nies' dissent, that it infringed because of the tests, despite its unassembled state as delivered. We were "bothered" because the original determination of willfulness had been made before this infringement occurred, and with respect to very different circumstances. It was our view, if treble damages for willfulness of infringement were to be assessed as to the Fort Howard machine, the record for our review should include findings of fact directed at that specific infringement, and showing why it was willful. Accordingly, we vacated that part of the judgment and remanded for a new determination of willfulness as to that machine.

Judge Reynolds has now done everything we could have wished. He has reopened the record for new testimony and documents after which he has prepared care-

ful and detailed findings and conclusions of law. His decision is to reaffirm and reinstate his previous judgment. He also denied a motion by Paper Converting for award of counsel fees. Magna-Graphics has again appealed, but we perceive no error and accordingly we affirm the judgment as reinstated.

### Discussion

The findings reveal correspondence and talks by Magna-Graphics with Paper Converting, Fort Howard, and with Mr. Custin, Magna-Graphics' patent attorney, as to the dilemma what to do with the unfinished machine in view of the injunction. The infringing parts were a relatively small portion of the entire machine. Proposals to redesign it to eliminate such parts were discussed, but came to nothing. Fort Howard and Mr. Custin both stated much concern about not violating the injunction. Fort Howard wanted to be kept informed and would accept some delay. It was told that any tests would be run "without the allegedly patent infringing parts, which are the pins, transfer pads, and knives." The attorney delivered a lecture on the cases also discussed in our former opinion: *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), and the two Second Circuit opinions discussed in *Laitram*, and by us. He was concerned about the possible legal consequences of any testing and communicated his concern. They were told not to make or test a complete assembly which, of course, would have included the infringing parts. As Judge Reynolds points out, Magna-Graphics also had a warning signal in their inability to purchase a supersedeas bond.

The tests that have been given such significance were run approximately July 15–31, 1981, and were very specific and detailed. Two of 36 pads were used in one test, and in a separate test, a knife smaller than the one designed for the machine. The pins were not used in any test.

The trier of fact disbelieved testimony that these specific tests were discussed with Mr. Custin. It seems clear he only learned of them later on, as did Fort Howard. Such secretive behavior was under the shadow of the injunction, with respect to actions whose potential importance Mr. Custin had clearly and correctly explained. Apparently he never anticipated what they were going to do and never warned against it in so many words. This is the basis of the argument before us on appeal: that the infringer conformed to the only express advice of counsel it received. This is somewhat reminiscent of the child who complained its mother failed to warn it not to eat the daisies. While it is not mentioned by Judge Reynolds, it occurs to us that competent counsel, warned of the client's intentions in advance, in view of the injunction, and the importance of discovering some way to complete the machine, might well have found some way to run what was proposed before the judge.

The tests apparently sufficed to convince Magna-Graphics and Fort Howard that the machine would work. It was shipped unassembled to Fort Howard and not accepted, assembled, or used until after the patent expired, April 22, 1982.

We agree with Judge Reynolds that the injunction, against a party who had already infringed, provided an added reason for caution. He found a reasonably prudent person would have discussed the specific test procedure with counsel, and "would have obtained a written opinion of counsel for the inevitable day in court." He could consequently only conclude that "under the totality of the circumstances, Magna-Graphics' post-injunction activities were willful."

Under Fed.R.Civ.P. 52(a), findings of fact are set aside only if clearly erroneous. Willfulness is a conclusion of fact to which this rule applies. *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 656, 225 USPQ 985, 989 (Fed. Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). It is not a matter of a *per se* rule, but of looking at the "totality of the circumstances." *Central Soya Co. v. Geo. A. Hormel & Co.*,

723 F.2d 1573, 1577, 220 USPQ 490, 492 (Fed.Cir.1983). Where, as here, the fact to be determined depends so much on credibility assessment, it would be peculiarly difficult for us to differ as to the facts. However, the assessment we would make, if free to do so, is not at all different.

It may be noted in passing that in remanding, we supposed that Magna-Graphics' conduct had been more careful than it is now found to have been. We supposed Magna-Graphics had "consulted its counsel several times before performing any post-injunction activities towards the completion of the Fort Howard machine. Its attorney apparently believed that by carefully planning the construction schedule, Magna-Graphics could complete the machine without infringing the '353 patent. Each calculated step Magna-Graphics took, it meticulously documented for the inevitable day in court." 745 F.2d at 20, 223 USPQ at 597. Believing all this, we remanded, because we believed a finding of willfulness was still within the discretion of the district judge to make. The case now before us is therefore an *a fortiori* one in our view.

■ The main thrust of Magna-Graphics' argument before us was, if this is willful infringement, every case will be willful infringement. The closeness of the question as to infringement itself is urged in support. We do not, of course, deny that the question is close. We could not do so in view of the able dissent that our colleague, Judge Nies, filed on the former appeal. On the other hand, the appellant must concede the position of Judge Reynolds as to infringement was at least arguable, even before it received the support of a majority of this panel and became law of the case. Magna-Graphics knew its own counsel regarded the whole prospect of assembling and testing the incomplete machine as a lake coated with thin ice indeed. We agree with Judge Reynolds that for an enjoined party the general rule is to "keep a safe distance from the margin line." If, as he also says, the decision nevertheless is to sail in close to the shoal, or skate where the ice is thin, "it is the responsibility of the alleged contemnor to insure that the court can make the requisite comparison—the accused activity with the alleged justification. There is no clear justification here because there is no clear evidence of just what advice was given to Magna-Graphics." We believe future patent litigation will include many alleged infringers who will not have been already under injunction, or will be able to produce a record that they disclosed their specific intention to knowledgeable advisers and obtained assurance they would not incur an excessive risk of contempt charges. Accordingly, this case will not constitute a precedent that all infringements are willful.

■ In its decision and order appealed from, the court denied a motion by Paper Converting for counsel fees, finding its treble damage award "adequate under the circumstances." Paper Converting has not cross-appealed as to this, so no claim for counsel fees is before us now. We note, however, that there is no necessary inconsistency between awarding treble damages on account of willful infringement and denying counsel fees whether or not the case is deemed "exceptional." The reasons for this are explained in *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed.Cir.1986).

### Conclusion

The judgment appealed from, as reinstated by the decision and order of May 30, 1985, is

AFFIRMED.

NIES, Circuit Judge, dissenting.

It will come as no surprise that I dissent to the trebling of damages with respect to the Fort Howard machine since I continue to believe there was no infringement in assembling and testing less than the complete claimed invention. However, looking only at the damage issue, I cannot agree that Magna-Graphic's infringement was willful because it obtained insufficient advice from counsel. The district court states that "[a]ll that [counsel] was clear

on was that Magna-Graphics should not test with the completed assembly." In the court's view it follows that the question of infringement by less than a complete assembly was left open, a question on which a reasonable person would have sought additional advice.

In my view, counsel's testimony with respect to his advice was not so limited. No advice was needed that a complete assembly would infringe (whether or not testing was done). The import of *Deepsouth*, the case he discussed with them, is not that complete assembly infringes but that an incomplete assembly does *not* infringe. The district court converted meaningful advice given to a client who was in danger of contempt into empty conversation.

Because Magna-Graphics acted in accordance with advice of counsel that was reasonable at the time it was given, I would reverse.