NATIONAL GYPSUM
COMPANY, Plaintiff,

v.

STEEL SYSTEMS INTERNATIONAL,
INC., and William L. Knorr,
Defendants.

Civ. No. 85–2134–FR.

United States District Court,
D. Oregon.

April 8, 1988.

Glenn H. Prohaska, Portland, Or., Allen H. Gerstein, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., for plaintiff.

Daniel P. Chernoff, William O. Geny, Chernoff, Vilhaur, McClung & Stenzel, Portland, Or., Edward V. Filardi, Frederick A. Tecce, Daniel A. DeVito, Brumbaugh, Graves, Donohue & Raymond, New York City, for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of the plaintiff, National Gypsum Company (National Gypsum), for an award of attorney fees pursuant to 35 U.S.C. § 285 (1984).

On January 25, 1988, a jury returned a verdict in favor of National Gypsum on all issues submitted to it. On February 1, 1988, this court entered a judgment in accordance with the jury verdict. On March 3, 1988, the court issued an injunction against defendants, Steel Systems International, Inc. (SSI) and William L. Knorr. National Gypsum now seeks an award of attorney fees. SSI and Knorr oppose an award of attorney fees.

35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Here, the court may award attorney fees to National Gypsum if it finds that National Gypsum is the prevailing party and that

this case is an exceptional case. The burden of proof on a motion for attorney fees rests with the moving party. *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582 (Fed.Cir.1985).

■] In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court sets out with approval the Ninth Circuit test for determining when a party is a prevailing party. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." 461 U.S. at 433, 103 S.Ct. at 1939; *accord Toussaint v. McCarthy*, 826 F.2d 901, 903–04 (9th Cir.1987). While National Gypsum presented evidence on only six out of twenty-three claims contained in the Sauer, et al. patents, National Gypsum prevailed on every issue submitted to the jury. The court concludes that National Gypsum is the prevailing party in this litigation.

■] The court must next determine whether this case is an exceptional case. This determination is a discretionary determination and will not be overturned on appeal unless it results from an abuse of discretion or an erroneous conception of the law. *Carpet Seaming Tape Licensing Corp. v. Best Seam Inc.*, 694 F.2d 570, 581 (9th Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983); *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1357–58 (9th Cir.1980).

■] In a patent case, a court may award attorney fees to the prevailing party only upon a finding of bad faith or inequitable conduct on the part of the losing party that would make it grossly unjust for the prevailing party to be left with the burden of its litigation expenses. *Carpet*, 694 F.2d at 581; *Mayview*, 620 F.2d at 1357. For a patent case to constitute an exceptional case for the award of attorney fees, the level of conduct must be more than simple negligence. *Mayview*, 620 F.2d at 1357.

District courts have ordinarily awarded attorney fees to prevailing parties in patent cases when willful infringement has been found. *Shiley, Inc. v. Bentley Laboratories, Inc.*, 601 F.Supp. 964, 969 (C.D.Cal. 1985), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987); *Bott v. Four Star Corp.*, 807 F.2d 1567, 1574 (Fed.Cir. 1986); *See S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 200–01 (Fed.Cir.1986) (numerous cases cited in support of awarding attorney fees where there was willful infringement).

In *Shiley*, the court based an award of attorney fees on the same conduct which it found to be willful infringement: the infringer's failure to discharge its duty to exercise due care to determine whether or not it was infringing the patents in suit by seeking legal advice. *Shiley*, 601 F.Supp. at 968. In *Mayview*, the appellate court found that fraud on the patent office was sufficient to constitute an exceptional case, but simple negligence was not. *Mayview*, 620 F.2d at 1359. In *S.C. Johnson & Son*, the appellate court reversed the trial court's denial of attorney fees where the trial court found willful infringement due to the failure of the defendant to exercise due care to determine if it was infringing or to seek legal advice. *S.C. Johnson & Son*, 781 F.2d at 199, 201. In *Bott*, the court based an award of attorney fees on the finding of willful infringement, which was based on continuing infringement during a stay of an injunction. *Bott*, 807 F.2d at 1572. In *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 482 (Fed.Cir.1985), the trial court awarded attorney fees based on its finding of willfulness where the infringer copied the patented device, knew of the patent, refused to stop producing the device, and refused an offer of a license.

■ Here, the jury found that the defendants had willfully infringed National Gypsum's patent. This finding is amply supported by the facts. Defendant Knorr was aware of the patents in suit because he had negotiated a license with National Gypsum in order that his business, Studco, Inc., could produce I-studs. (Tr. 485, 578). Knorr then formed SSI and proceeded to make and sell infringing I-studs. (Tr. 532, 495–96). Knorr executed an agreement

with Genstar (now Domtar), acting as agent for four other gypsum companies, to enable SSI to supply others with tabbed metal I-studs for use as a component in the Series V shaftwall systems. (Pl.Ex. 71, Tr. 532–34). Knorr and his businesses had been specifically warned that the use of the tabbed metal I-stud in a shaftwall may be covered by National Gypsum's patents in suit. (Pl.Ex. 71, para. 9).

SSI and Genstar then entered into a sub-license agreement which purported to allow SSI to use and sell the inventions covered by the patents in suit. (Pl.Ex. 87 and 90, Tr. 300–01). Without seeking legal advice as to the validity of this agreement, SSI began direct sales to all customers. (Tr. 303–07, 504). When National Gypsum sought to stop the infringing, Knorr asserted that all sales of the studs were sold and reported to Genstar. (Pl.Ex. 86, 89). At trial, Knorr admitted that the majority of studs were never sold to Genstar. (Tr. 552–55).

Knorr also concealed from National Gypsum that he and his businesses were short changing National Gypsum on royalty payments. (Tr. 544–48). Knorr attempted to cover up the sales by SSI of tabbed metal I-studs to Approved Equal, Inc., a related Knorr company. (Pl.Ex. 79, 160, Tr. 562–65).

The court concludes that there is substantial evidence in the record to support a finding of willful infringement. Based on the totality of circumstances, this court finds that exceptional circumstances exist so as to justify an award of attorney fees to National Gypsum, the prevailing party.

This court will allow an award of attorney fees to National Gypsum for attorney fees it incurred asserting the Sauer, et al. patents.