**PHARMACIA & UPJOHN COMPANY,**
Plaintiff–Appellee,

v.

**MYLAN PHARMACEUTICALS,**
**INC., Defendant–Appellant.**

**No. 99–1001.**

United States Court of Appeals,
Federal Circuit.

July 16, 1999.

Before LOURIE, Circuit Judge, SMITH, Senior Circuit Judge, and SCHALL, Circuit Judge.

SCHALL, Circuit Judge.

Mylan Pharmaceuticals, Inc. ("Mylan") appeals the order of the United States District Court for the Northern District of West Virginia denying Mylan's motion for attorney fees under 35. U.S.C. § 285 (1994). *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, No. 1:97–CV–41 (N.D.W.Va. Aug. 17, 1998). Mylan sought to recover the fees it incurred as defendant in the suit brought by Pharmacia & Upjohn Co. ("Upjohn") alleging infringement of Upjohn's United States Patent No. 4,916,163 (the '163 patent), relating to formulations of the anti-diabetic drug, glyburide. We vacate and remand.

## DISCUSSION

### I

The '163 patent, entitled "Spray–Dried Lactose Formulation of Micronized Glyburide," describes and claims micronized glyburide compositions which employ a special form of lactose, known as "spray-dried lactose," as the predominant excipient. Mylan's formulations, which Upjohn alleged infringe the '163 patent, comprise "anhydrous" lactose, which is nonspray-dried but provides the same benefits as spray-dried lactose.

During the course of Upjohn's patent infringement action against Mylan, Upjohn was involved in an action against Mova Pharmaceuticals Corp. ("Mova") in the United States District Court for the District of Puerto Rico. That action, in which Upjohn also alleged infringement of the '163 patent, proceeded to a jury verdict and judgment on December 2, 1997, in favor of Mova. *See Upjohn Co. v. Mova Pharm., Corp.*, 31 F.Supp.2d 211, 213, 48 USPQ2d 1357, 1358 (D.P.R.1998); *see also Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 5 F.Supp.2d 399, 406, 46 USPQ2d 1831, 1837 (N.D.W.Va.1998) (dis-

E. Anthony Figg, Rothwell, Figg, Ernst & Kurtz, of Washington, DC, argued for defendant-appellant. With him on the brief was Minaksi Bhatt. Of counsel were Dawn J. Beto and Roger L. Foster, Mylan Pharmaceuticals, Inc., of Morgantown, West Virginia. Also of counsel was Lucien G. Lewin, Steptoe & Johnson, of Martinsburg, West Virginia.

Steven J. Glassman, Kaye, Scholer, Fierman, Hays & Handler, of New York, New York, argued for plaintiff-appellee. With him on the brief was Gerald Sobel.

cussing *Mova* ). Among other things, the *Mova* jury determined that Mova had proved by clear and convincing evidence that the '163 patent is invalid as obvious under 35 U.S.C. § 103, and unenforceable due to inequitable conduct. Subsequently, Upjohn filed a motion for judgment as a matter of law (JMOL) and, alternatively, for a new trial (collectively, Upjohn's "JMOL motion").

While Upjohn's JMOL motion in *Mova* was pending, the district court in this case granted summary judgment of non-infringement based upon its conclusion that prosecution history estoppel barred the '163 patent from covering compositions comprising nonspray-dried lactose such as Mylan's anhydrous lactose through the doctrine of equivalents.[1] *See Mylan*, 5 F.Supp.2d at 407, 46 USPQ2d at 1838. The court also applied as collateral estoppel the *Mova* judgments of invalidity and unenforceability. *See id.* We subsequently affirmed both rulings. *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373, 50 USPQ2d 1033 (Fed.Cir. 1999).

On August 17, 1998, the district court in *Mova* issued a written opinion and order denying Upjohn's JMOL motion. *See Mova*, 31 F.Supp.2d at 218, 48 USPQ2d at 1362. That same day, the district court in this case issued a two page opinion and order denying Mylan's motion for attorney fees. In ruling on the attorney fees issue, the court applied Fourth Circuit precedent. *See Mylan*, at 400–01. It stated:

> In the Fourth Circuit, award of attorneys' fees under 35 U.S.C. § 285 is within the discretion of the Court, and "discretion should not be exercised except in situations involving vexatious and unjustified litigation." The [Fourth Circuit] defined exceptional circumstances as those involving fraud, malice, and bad faith.
>
> In considering whether a patent case is an exceptional case for purposes of awarding attorney fees, courts look to factors such as whether the parties' conduct during litigation was equitable, including evidence of bad faith. In the present action, the defendant argues that the plaintiff's litigation conduct was inequitable and egregious. Defendant also alleges that the plaintiff filed a meritless case to trigger the automatic injunction against the Food and Drug Administration approval of one of Mylan's product[s].
>
> After considering plaintiff's litigation tactics, the Court concludes that plaintiff's litigation tactics were in good faith, raising genuine issues of patent infringement. Thus, the Court finds that this case is not an exceptional case for purposes of awarding attorney fees.

*Id.*

On appeal, Mylan contends that the district court failed to apply our precedent under 35 U.S.C. § 285, and instead applied an improper legal standard. Mylan argues that under our precedent, a court may declare a case to be exceptional based upon a number of findings, including inequitable conduct during patent prosecution, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit. According to Mylan, all of these factors are present in this case. Mylan also argues that the district court based its decision not to award attorney fees on clearly erroneous findings of fact. Upjohn responds that the district court did not abuse its discretion in denying attorney fees under 35 U.S.C. § 285. Upjohn further argues that the district court was not obligated to list factors that might have supported a contrary decision.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II

We review *de novo* whether the district court applied the proper legal stan-

---

1. Upjohn did not allege that Mylan's anhydrous lactose formulations literally infringe the '163 patent.

dard under 35 U.S.C. § 285, and we review the court's factual findings, including whether this was an exceptional case, for clear error. *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1186, 33 USPQ2d 1823, 1833 (Fed.Cir.1995); *Reactive Metals & Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582–83, 226 USPQ 821, 824 (Fed.Cir. 1985). If the district court applied the correct legal standard and did not clearly err in its factual findings, then we review the court's decision whether or not to award attorney fees for abuse of discretion. *See id.; Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1178 (Fed.Cir.1998) (en banc); *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986).

### III

### A

Mylan first contends that the district court ignored our precedent and erroneously applied an improperly high Fourth Circuit standard of exceptionality, requiring proof of "fraud, malice and bad faith." Mylan argues that the appropriate Federal Circuit standard recognizes that a judgment of inequitable conduct alone is enough to warrant a finding of exceptionality.

Upjohn, on the other hand, argues that the Fourth Circuit cases are consonant with our precedent under 35 U.S.C. § 285. According to Upjohn, it is Mylan's cases that are inapt, because they involve egregious conduct in frivolous lawsuits. Upjohn acknowledges that it lost the *Mova* case upon a finding of inequitable conduct, but disputes that the appropriate consequence is an automatic award of attorney fees. Fees may be granted only if this is an exceptional case, Upjohn maintains, and such a finding could not be drawn from the bald jury verdict in *Mova,* particularly in view of Upjohn's good faith arguments in *Mova* and the complexity of the case.

■ We agree with Mylan that the district court erred as a matter of law in failing to consider the *Mova* verdict and judgment of inequitable conduct. The district court relied upon several cases, none of which recognizes inequitable conduct as a factor in determining whether a case was exceptional. *See Mylan,* at 400–01. *Cf. DuBuit v. Harwell Enter.,* 540 F.2d 690, 693 (4th Cir.1976) (citing *American Chain & Cable Co. v. Rochester Ropes,* 199 F.2d 325, 330 (4th Cir.1952)); *Hoge Warren Zimmermann Co. v. Nourse & Co.,* 293 F.2d 779, 784 (6th Cir.1961); *Interspiro USA, Inc. v. Figgie Int'l, Inc.,* 815 F.Supp. 1488 (D.Del.1993).

■ Our precedent governs the substantive interpretation of 35 U.S.C. § 285, which is unique to patent law. *Cf. Delta & Pine Land Co. v. Sinkers Corp.,* 177 F.3d 1343, 50 USPQ2d 1749, 1753–54 (Fed.Cir. 1999) ("We must determine all substantive [patent] law issues for ourselves, even though on issues of procedural law in such cases, we must defer to the regional circuit, with certain exceptions."); *Midwest Indus. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 50 USPQ2d 1672, 1674–76 (Fed.Cir. 1999) (en banc); *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1067–70, 46 USPQ2d 1097, 1104–06 (Fed. Cir.1998) (en banc). Furthermore, our precedent establishes that inequitable conduct is a substantive patent issue that must be taken into consideration in determinations under 35 U.S.C. § 285. In *A.B. Chance Co. v. RTE Corp.,* we remanded a case under 35 U.S.C. § 285 with instructions to determine whether the patentee had engaged in inequitable conduct:

> Inequitable conduct is a separate defense to patent infringement and, either alone or in conjunction with trial conduct, may constitute the basis for an award of attorney fees under 35 U.S.C. § 285 (1982). We agree that, in its consideration of sanctions, the district court erred when it did not make a determination of whether or not [the patentee] had engaged in inequitable conduct before the PTO. Accordingly, we vacate the district court's denial of the request for

attorney fees and sanctions and remand for reconsideration of these issues. 854 F.2d 1307, 1312–13, 7 USPQ2d 1881, 1885 (Fed.Cir.1988). Here, a judgment of inequitable conduct has already been made by a court of competent jurisdiction. As a matter of law, we hold that such a judgment must be considered in ascertaining whether a case is exceptional under 35 U.S.C. § 285. Accordingly, we vacate and remand for consideration of whether this is an exceptional case in view of the judgment in *Mova*.[2]

## B

### 1

Mylan argues that the district court erred by overlooking what it contends were Upjohn's vexatious litigation tactics, including a baseless assertion of willful infringement. Mylan characterizes the willfulness charge as baseless because Mylan had expressly notified Upjohn of its Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration ("FDA"), seeking approval to manufacture and sell micronized glyburide tablets before the '163 patent expires.[3] Mylan emphasizes that it also had provided a detailed explanation of the grounds for its non-infringement position the same grounds upon which the district court ultimately relied in granting summary judgment of non-infringement. Mylan claims in addition to have provided voluminous confidential information in an effort to avoid this litigation. According to Mylan, even if Upjohn had a colorable claim of infringement which Mylan disputes Upjohn had no basis for its charge of willfulness. Mylan suggests that Upjohn charged it with willfulness to force it to choose between: (1) asserting a defense of

good faith reliance on advice of counsel, requiring Mylan to waive its attorney-client privilege; or (2) waiving the good faith defense to maintain its privilege. Mylan argues that Upjohn's refusal to drop the willfulness charge or to consent to bifurcation unnecessarily multiplied the cost of the litigation.

In response, Upjohn argues that its charge of willfulness was not improper because Mylan's knowledge of the '163 patent called for exercising a heightened duty of care by obtaining competent opinion of counsel. Upjohn's charge of willful infringement and efforts to discover any such opinion were hardly vexatious, Upjohn insists, given Mylan's admitted knowledge of Upjohn's patent, its use of the same active ingredient, its choice of a substitute excipient that has the same function, way, and result as Upjohn's, and its purposeful attempt to achieve bioequivalence. In Upjohn's view, the district court did not clearly err in finding that Upjohn's conduct was in good faith.

Additional vexatious litigation tactics that Mylan contends the district court overlooked included Upjohn's opposition to Mylan's collateral estoppel motion. In Mylan's view, the opposition would have been difficult to defend under any circumstances, but it was particularly inappropriate in light of Upjohn's earlier acknowledgment that "collateral estoppel principles would apply at this stage of the proceeding after the entry of the District Court judgment in Puerto Rico." In addition, Mylan asserts that Upjohn resorted to delay tactics in seeking a stay pending the outcome of its JMOL motion in *Mova*. Mylan argues that Upjohn's tactics were meant to delay FDA approval of Mylan's

---

**2.** We note that the *Mova* case is on appeal to this Court. The district court, on remand, may wish to consider staying consideration whether this is an exceptional case until we review the *Mova* judgment.

**3.** Mylan's ANDA was filed pursuant to The Drug Price Competition and Patent Term Restoration Act, Pub.L. No. 98–417, 98 Stat. 1585 (1984) (codified as amended at 21 U.S.C.

§ 355 (1994)). For an explanation of the ANDA process and its interplay with other relevant statutes, see *Bristol–Myers Squibb v. Royce Laboratories, Inc.*, 69 F.3d 1130, 1131–32, 36 USPQ2d 1641, 1642–44 (Fed.Cir. 1995). *See also Dupont Merck Pharm. Co. v. Bristol–Myers Squibb Co.*, 62 F.3d 1397, 1399–1401, 35 USPQ2d 1718, 1719–21 (Fed. Cir.1995).

product and should at least warrant the award of reasonable attorney fees.

Upjohn responds by insisting that its opposition to Mylan's motion for summary judgment was a good faith submission because collateral estoppel does not apply where the *Mova* court "wholly failed to grasp the technical subject matter and issues in the suit." It urges that its motion for a stay was also a good faith submission because the judgment in *Mova* remained subject to Federal Circuit review.

**2**

■■■ We agree with Mylan that, as a matter of law, the district court should have considered whether Upjohn was vexatious in alleging willfulness and in resisting the collateral estoppel effect of the *Mova* judgment of invalidity. We do not hold, however, that an improvident allegation of willfulness or resistance to the imposition of collateral estoppel automatically warrants an award of attorney fees. In *Stevenson v. Sears, Roebuck & Co.,* we stated:

> A patentee should not automatically be penalized for pursuing a patent infringement action after a determination of invalidity in another suit. There must be some finding by the trial judge of unfairness, bad faith, inequitable conduct, vexatious litigation, or some similar exceptional circumstance that would bring [the] case within [35 U.S.C. § 285]. Absent such a finding, it is improper for a trial judge to award attorney fees.

713 F.2d 705, 713, 218 USPQ 969, 976 (Fed.Cir.1983). Thus, we hold only that the district court should have addressed Upjohn's assertion of willful infringement and its position on the matter of collateral estoppel. We decline to decide these issues in the first instance. *Cf. Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 13 USPQ2d 1967 (Fed.Cir.1990) ("The finding of 'exceptional case' is one of fact, and must be made in the first instance by the district court.") Accordingly, we remand them to the district court.

**C**

■■■ Mylan also contends that the district court's denial of fees stemmed from a clearly erroneous finding of "genuine issues of patent infringement." In Mylan's view, the court's own opinion and order confirms that the case should never have been brought because it shows that prosecution history estoppel clearly prevents the '163 patent from covering compositions comprising nonspray-dried lactose through the doctrine of equivalents.

In Upjohn's view, this case involved substantial issues of infringement and validity that Upjohn was entitled to pursue. In particular, Upjohn asserts that it was entitled to press its infringement claims against Mylan's affirmative defense of prosecution history estoppel. The allegation that Upjohn's arguments were in bad faith, Upjohn maintains, is belied by the substantiality of those arguments and by the fact that the *Mova* court had rejected a prosecution history defense similar to that raised by Mylan. Upjohn argues that, based upon the record, the district court did not clearly err in finding this case unexceptional and did not abuse its discretion in denying attorney fees.

We find no clear error in the district court's determination that Upjohn raised "genuine issues of patent infringement." Specifically, Upjohn raised legitimate issues concerning whether it had disclaimed Mylan's anhydrous lactose when it distinguished "conventional or nonspray-dried lactose." *See Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.,* 170 F.3d 1373, 1376, 50 USPQ2d 1033, 1036 (Fed.Cir.1999).

Accordingly, we do not disturb the district court's findings discussed in Part III.C of this opinion. However, for the reasons discussed above, the matters addressed in Parts III.A and III.B are remanded for further consideration by the district court. The court's ultimate determination under 35 U.S.C. § 285 is vacated and the case as a whole is remanded for further proceedings consistent with this opinion.

COSTS

Each party shall bear its own costs.

*VACATED* and *REMANDED*.